IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHUNSTON S. SEAFORTH,<br>    *Plaintiff*<br><br>-vs-<br><br>LOANCARE LLC, NATHAN SHELTON,<br>CORNERSTONE HOME LENDING,<br>INC.,  U.S. BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR<br>GINNIE MAC REMIC TRUST 2022-088;<br>ATTORNEY BILL ATMORE;<br>    *Defendants* | SA-25-CV-00422-XR |

## ORDER ON PENDING MOTIONS AND DISMISSAL

On this date, the Court considered Plaintiff Shunston S. Seaforth's motion to remand (ECF No. 4), the motions to dismiss filed by Defendant LoanCare LLC ("LoanCare") (ECF No. 3) and Defendant Cornerstone Home Lending, Inc. ("Cornerstone") (ECF No. 5), and Plaintiff's motion for issuance of subpoena duces tecum (ECF No. 8), motion to reinstate possession (ECF No. 12), and motion for judicial review of emergency motion (ECF No. 14). After careful consideration, the Court issues the following order.

### BACKGROUND

This is pro se Plaintiff Shunston S. Seaforth's third suit challenging the foreclosure of his home located at 11314 Hill Top Bend, Helotes, Texas (the "Property"), based on an allegedly improper securitization and defective UCC filings. *See Seaforth v. Loancare, LLC*, No. 5:24-CV-576-FB-RBF (W.D. Tex.) [the "First Action"]; *Seaforth v. Cornerstone Home Lending, Inc.*, No. 5:25-CV-144-XR (W.D. Tex.) [the "Second Action"]. The first two cases, both filed in federal court, were dismissed in November 2024 and March 2025. This action was filed in state court on March 17, 2025, following the foreclosure sale of the Property on March 4, 2025, and timely removed to this Court based on federal question jurisdiction.

I.      **Previous Litigation**

In the First Action, filed in May 2024, Plaintiff sued LoanCare for violations of the Texas Business & Commerce Code § 24.005(a)(1), fraud, unconscionable contract, improper assignment. *See* ECF No. 1.

Judge Biery adopted the Magistrate Judge's recommendation to dismiss Plaintiff's claims because the "theory that any securitization of [a] loan rendered the note and accompanying deed of trust unenforceable and discharged [the borrower's] obligations under them . . . [is] without merit." *See Seaforth v. Loancare, LLC*, No. 5:24-CV-576-FB-RBF, 2024 WL 4906781, at *5 (W.D. Tex. Nov. 14, 2024), *report and recommendation adopted*, No. CV SA-24-CA-00576-FB, 2024 WL 4906759 (W.D. Tex. Nov. 26, 2024) (quoting *Marban v. PNC Mortg.*, No. 3:12-cv-3952-M, 2013 WL 3356285, at *10 (N.D. Tex. July 3, 2013)).

The Magistrate Judge concluded that neither the transfer to the Trust nor the securitization needed to be recorded because the Deed of Trust names Mortgage Electronic Registration Systems ("MERS") as a beneficiary of the security instrument. According to the Fifth Circuit, "MERS-member banks and entities can repeatedly assign a promissory note secured by [the] deed of trust to other MERS members without recording those transfers in a public-records office." *Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545, 556 (5th Cir. 2015). The Magistrate Judge reasoned that Plaintiff failed to allege that "Ginnie Mae or the accompanying Trust were not MERS members and thus [did] not plausibly plead a failure to record the assignment such that the loan agreement is void." *Seaforth*, 2024 WL 4906781, at *4.

The Magistrate Judge also pointed out that any Truth in Lending Act ("TILA") claims against the Trust were barred by its one-year statute of limitations and that Plaintiff had not shown that LoanCare (as a servicer) was a proper defendant.

Plaintiff filed the Second Action in February 2025, relying on essentially the same legal theories in the form of new claims and joining Cornerstone and U.S. Bank as defendants. Specifically, Plaintiff alleged claims for violations of TILA, the Real Estate Settlement Procedures Act ("RESPA"), breach of fiduciary duty, improper assignment, unjust enrichment, fraudulent concealment, civil conspiracy, negligence and conversion. Section Action, ECF No. 1.

Plaintiff filed numerous motions in that case seeking to stay a foreclosure sale schedule for March 4, 2025. At a hearing on February 27, 2025, the Court denied Plaintiff's previous motions for a temporary restraining order and for a stay of the foreclosure proceedings, explaining that he could not establish a likelihood of success on the merits because Texas courts had uniformly rejected his legal theories as meritless. Following the hearing, Plaintiff filed another motion for a temporary injunction staying the foreclosure sale, which the Court denied via text order on March 3, 2025, for the same reasons stated at the hearing.

The Property was sold at foreclosure sale on March 4, 2025 to Defendant Nathan Shelton, who was allegedly represented by an attorney, Defendant Bill Atman, in connection with the sale. *See* ECF No. 1-3 ¶ 16.

A week later, the Court issued an order denying Plaintiff's requests for further injunctive relief and dismissed his claims with prejudice, noting that his joinder of Cornerstone and U.S. Bank could not cure the fundamental defects in his underlying legal theories. *See* Second Action, ECF No. 17.

## II. The Instant Action

On March 17, 2025, six days after the dismissal of the Second Action in federal court, Mr. Seaforth filed this Third Action challenging the foreclosure proceedings in the 57th Civil District Court before Judge Antonia Arteaga. *See id.* at 5; *Seaforth v. Cornerstone Home Lending, Inc.*,

Case No. 2025CI05973, https://perma.cc/GYX9-5ES7.[1] This time, in addition to LoanCare, Cornerstone, and U.S. Bank, he sued Nathan Shelton, who purchased the Property at the foreclosure sale, and Shelton's attorney, Bill Atmore. *See* ECF No. 1-3. Mr. Seaforth alleges violations of TILA, the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA") and claims for fraud and wrongful foreclosure, again arising out of purported defects in the securitization and transfer of his loan. *See* ECF No. 1-3 at 4–6.

Plaintiff allegedly served LoanCare, Cornerstone, and U.S. Bank on March 31, 2025, LoanCare and Cornerstone were served in the state court action, though there is some doubt about the propriety of service. *See* ECF No. 10 at 2 (citing ECF No. 1-3 at 7).

According to appellate records, Judge Arteaga declined to consider Mr. Seaforth's applications for emergency relief given the previous resolution of his claims in federal court. Mr. Seaforth appealed the denial of emergency relief to the Fourth Court of Appeals. *Seaforth v. Cornerstone Home Lending, Inc.*, No. 04-25-200-CV, https://perma.cc/7JW9-89GT. That appeal was abated, however, following the removal of the Third Action to federal court by LoanCare on April 18, 2025 based on federal question jurisdiction. *See id.*, Order (Apr. 29, 2025); ECF No. 1.

On April 18, 2025, LoanCare removed the action to this Court based on federal question jurisdiction. *See* ECF No. 1.

Plaintiff asks the Court to remand the case to state court (ECF No. 4). Defendants LoanCare and Cornerstone oppose remand and seek dismissal of Plaintiff's claims against them (ECF Nos. 3, 5). Plaintiff has also filed a motion for issuance of subpoena duces tecum (ECF No. 8), a motion to reinstate possession (ECF No. 12), and a motion for judicial review of emergency motion (ECF

---

[1] The Court may take judicial notice of matters of public record. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

4

No. 14). After careful consideration, the Court denies remand and dismisses Plaintiff's complaint in its entirety for the reasons stated herein.

## DISCUSSION

### I. Motion to Remand (ECF No. 4)

Plaintiff seeks remand on the basis that (1) Defendants' counsel made unidentified "false assertions," (2) Defendants failed to appear in related proceedings, (3) Defendants did not properly remove the action, (4) his claims do not warrant federal jurisdiction, and (5) he has made due process demands.

Plaintiff does not identify the alleged misrepresentations he believes were made nor cite any authority explaining why any such misrepresentations would prevent removal to federal court. Further, a defendant need not appear in a state court action before removing it to federal court. Accordingly, the Court turns to Plaintiff's arguments that removal was both procedurally and substantively defective.

#### A. Procedural Propriety of Removal

Plaintiff asserts that removal was procedurally improper under 28 U.S.C. § 1446(b) because LoanCare did not obtain the consent of all Defendants who had been served with process at the time of removal—Cornerstone and U.S. Bank. ECF No. 4. On April 22, 2025, the Court issued its Standing Order Concerning Removal ("Standing Order") directing LoanCare to submit an advisory to the Court within seven days that, among other things, "[i]dentif[ied] any defendant who had been served prior to the time of removal who did not formally join in the notice of removal and the reasons therefor (provide copies of written consents, if any, if not already on file)." ECF No. 2.

In its timely response to the Standing Order, LoanCare stated:

> Upon information and belief, the only other defendants served prior to the removal of this action were Cornerstone Home Lending, Inc. ("Cornerstone") and US Bank, as Trustee for Ginnie Mae Remic Trust 2022-088 ("US Bank"). Defendant LoanCare was unable to contact Cornerstone and US Bank to request their consent to removal prior to filing its removal because neither of the defendants had made an appearance in the state court action and efforts by counsel to identify and locate counsel for said defendants were not successful prior to the deadline for removal. Cornerstone filed a Motion to Dismiss in this matter on April 25, 2025, and consents to the removal of this matter to federal court. A copy of an email chain between counsel for LoanCare and Cornerstone noting its consent to removal is attached. US Bank has not yet answered or otherwise appeared in this matter in either state court or federal court. Counsel for LoanCare continues efforts to locate an appropriate US Bank representative to discuss its consent to removal and has no reason to believe that US Bank will have any objection to removal.

ECF No. 6. On May 8, 2025, U.S. Bank also notified LoanCare that it consented to the removal of this action to federal court.

"[B]ased on the so-called rule of unanimity (or unanimity of consent rule), if an action is removed under 28 U.S.C. § 1441(a) based on federal question jurisdiction, 'all defendants who have been properly joined and served must join in or consent to the removal of the action.'" *Breitling v. LNV Corp.*, 86 F. Supp. 3d 564, 569 (N.D. Tex. 2015). As the removing party, LoanCare bears the burden of establishing compliance with the rule of unanimity, either by establishing that all properly joined and served defendants consented to removal or that their consent to removal was not required. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

Ultimately, LoanCare determined that U.S. Bank's consent was not required for removal because it had not been properly served. *See* ECF No. 1-3 at 7 (attesting to service of U.S. Bank at 425 Walnut Street, Cincinnati, OH 45202, not through its registered agent or a president or branch manager at a Texas office). A financial institution, however, must be served through its registered agent. TEX. CIV. PRAC. & REM. CODE § 17.028(b). *U.S. Bank Nat'l Ass'n as Tr. for*

6

*Residential Asset Mortg. Prods., Inc., Mortg. Asset-Backed Pass-Through Certificates Series 2005-EFC2 v. Moss*, 644 S.W.3d 130, 133 (Tex. 2022). Only financial institutions without registered agents can be served through the president or a branch manager of a Texas office location. *Id.*

The rationale for the unanimity rule—"that a plaintiff should only be required to proceed against multiple defendants in one action"—is inapplicable here, where the properly served defendants have consented to proceed in federal court. *LinkEx, Inc. v. CH Robinson Co., Inc.*, No. 3:10–cv–2372–M, 2011 WL 1447570, at *2 (N.D. Tex. Apr. 12, 2011). And, while any doubts about the propriety of removal should be construed in favor of remand "[b]ecause removal raises significant federalism concerns," *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008), the courts have emphasized that the determination of exceptional circumstances is made on a case-by-case basis, considering the specific facts and equities involved. *Doe v. Kerwood*, 969 F.2d 165 (1992). That principle, animated by federalism concerns, is not implicated here, given the Court's previous adjudication of nearly identical claims. Indeed, the state court judge originally assigned to the case denied Plaintiff's request for injunctive relief based on the Court's dispositive rulings in the First and Second Actions. *Seaforth v. Cornerstone Home Lending, Inc.*, No. 04-25-200-CV, https://perma.cc/7JW9-89GT. After losing in federal court, Plaintiff appears to have turned around and filed a nearly identical suit in state court in hope of reaching a different result. Moreover, even moving to remand this case, Plaintiff has sought to defend himself in other state-court actions based on the removal of this case. *See* ECF No. 12 ("Motion to *Enforce* Federal Jurisdiction") (emphasis added).

Given the equities involved and the interest of judicial economy, the Court declines to remand the case to state court based on LoanCare's allegedly improper removal under these

exceptional circumstances. *See Lonestar Capital Assets Inc. v. Seaforth*, Case No. 31E2501461, https://perma.cc/AZ67-CKKD.

### B. The Court has subject matter jurisdiction over Plaintiff's claims

Determining whether a particular case arises under federal law generally turns on the "well-pleaded complaint" rule, which states that the basis for federal jurisdiction must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citations omitted). "A federal question exists 'only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)).

Plaintiff's state-court petition clearly asserts claims arising under federal law. *See* ECF No. 1-3 (alleging TILA, RESPA, and FDCPA violations). Accordingly, this Court has federal question subject matter jurisdiction over Plaintiff's claims.

## II.   Motions to Dismiss (ECF Nos. 3, 5)

Because foreclosure has already occurred, Plaintiff's claims for injunctive relief are moot. *Pollett v. Aurora Loan Servs.*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam). Moreover, many of Plaintiff's claims are barred by res judicata and/or collateral estoppel. His remaining claims for damages fail to state a claim upon which relief can be granted.

A.     **Legal Standards**[2]

1.     **Rule 12(b)(6) Dismissal**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

"Claims alleging fraud and fraudulent inducement are subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Schnurr v. Preston*, No. 5:17-CV-512-DAE, 2018 WL 8584292, at *3 (W.D. Tex., May 29, 2018). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

---

[2] When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a party's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Ferguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Likewise, while courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2. Res Judicata and Collateral Estoppel

Res judicata is generally "an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004) (citing *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."). Nevertheless, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

The doctrine of res judicata contemplates, at minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983). The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466-67 (5th Cir. 2013); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive

effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). "True res judicata" or "claim preclusion . . . bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). For a claim to be barred on res judicata grounds, the Fifth Circuit requires that: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.*

As to the last element—whether the same claim or cause of action was involved in both actions—courts apply a "transactional test, which requires that the two actions be based on the same nucleus of operative facts." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009) (internal citations omitted). Under that transactional test, a prior judgment's preclusive effect extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). Additionally, the doctrine "extends beyond claims that were actually raised and bars all claims that 'could have been advanced in support of the cause of action on the occasion of its former adjudication. . . .'" *Maxwell v. U.S. Bank, N.A.*, 544 F. App'x 470, 472 (5th Cir. 2013) (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)).

"Collateral estoppel (issue preclusion) differs from res judicata (claim preclusion) in that it is an equitable doctrine which should be 'applied only when the alignment of the parties and the

11

legal and factual issues raised warrant it.'" *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (quoting *Nations v. Sun Oil Co. (DELAWARE),* 705 F.2d 742, 744–45 (5th Cir. 1983) (en banc)). The doctrine of collateral estoppel "preclude[s] relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169, 104 S. Ct. 575 (1984). To determine whether collateral estoppel applies, the Court considers whether:

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is [any] special circumstance that would make it unfair to apply the doctrine.

*Baros v. Tex. Mexican Ry. Co.*, 400 F.3d 228, 232–33 (5th Cir. 2005) (quoting *Winters v. Shamrock Chem. Co.*, 146 F.3d 387, 391 (5th Cir. 1998)). Other safeguards include whether the facts and legal standards used to assess them are the same in both proceedings, whether a new determination is warranted by differences in the procedures employed in the two courts, and whether judicial review of the first proceeding was available. *Id.* at 233.

### B. Analysis

#### 1. Claims Barred by Res Judicata and/or Collateral Estoppel

Plaintiff's claims premised on the allegedly defective securitization of his mortgage loan in 2022 and improper assignment of his mortgage to a new servicer in March 2024 against LoanCare are barred by the doctrine of res judicata based on the judgments in the First and Second Actions. *See* First Action, ECF No. 43 (dismissing Plaintiff's claims *with prejudice*); Second Action, ECF No. 18 (dismissing Plaintiff's claims *with prejudice*). Plaintiff's claims in this action challenge the same transactions—the securitization and servicing transfer—raised in the first two suits, based on the same faulty legal theories that have already been rejected by this Court twice.

12

*See* First Action, ECF No. 34 (report and recommendation rejecting Plaintiff's "split-the-note" and improper assignment theories of liability as to the securitization and servicing transfer) and ECF No. 42 (adopting report and recommendation); Second Action, ECF No. 18 (rejecting Plaintiff's "split-the-note" and improper assignment theories of liability as to the securitization and servicing transfer based on the judgment in the First Action); *Davenport*, 484 F.3d at 326.

Plaintiff's claims against the remaining Defendants premised on these same failed theories of liability are barred by the doctrine of collateral estoppel because the issues under consideration—Plaintiff's legal challenges premised on purported defects in the 2022 securitization and 2024 servicing transfer—are identical to those litigated in the First and Second Action. Plaintiff has had multiple opportunities to defend these arguments before the Court, including a hearing, and the Court's rejection of these theories was necessary to support the judgment in both actions.

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is [any] special circumstance that would make it unfair to apply the doctrine.

*Baros*, 400 F.3d at 232–33.

### 2. TILA Claims

Plaintiff claims that "Defendants failed to honor Plaintiff's rescission notice and unlawfully continued foreclosure proceedings, violating 15 U.S.C. § 1635." ECF No. 1-3 ¶ 17. But "[t]here is no right of rescission with respect to 'residential mortgage transactions.'" *Green v. Bank of Am. N.A.*, No. H-13-1092, 2013 WL 2417916, at *4 (S.D. Tex. June 4, 2013); *see* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1).

Plaintiff also alleges that he did not receive required notice of the transfer of servicing rights from Cornerstone to LoanCare on March 6, 2024, in violation of 15 U.S.C. § 1641(g). Section 1641(g) of TILA provides that, within 30 days after a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt must provide notice of the transfer and certain disclosures in writing. 15 U.S.C. § 1641(g).

This claim also fails. To begin, Plaintiff's claim, filed over a year after the transfer, appears to be time-barred. *See* 15 U.S.C. § 1640(e). Moreover, Plaintiff has not plausibly alleged that he has sustained any damages based on LoanCare's failure to disclose the transfer. *Turner v. AmericaHomeKey Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *3 (N.D. Tex. Aug. 16, 2011), *aff'd*, 514 F. App'x 513 (5th Cir. 2013) ("A creditor who fails to comply with a requirement imposed under §§ 1638 and 1641(g)(1) faces liability for "any *actual* damage sustained . . . as a result of the failure." (quoting U.S.C. § 1640(a)(1)).

Accordingly, Plaintiff has failed to state a plausible TILA claim against LoanCare.

### 3. RESPA Claims

Plaintiff alleges that Defendants violated RESPA by "fail[ing]to provide required notices of transfer and fail[ing] to respond to Plaintiff's Qualified Written Request [(QWR)]." ECF No. 1-3 ¶ 18. It is not clear from the pleadings when these QWRs were allegedly sent. One affidavit attached to Plaintiff's pleading states that he submitted a QWR on January 10, 2024. *See id.* at 18. Other affidavits indicate that he sent a QWR on December 5, 2024. *See id.* at 13, 38, 47.

To state a claim under 12 U.S.C. § 2605(e), Plaintiff must plead that his correspondence met the requirements of a QWR, that the servicer failed to make a timely response, and that the failure caused actual damages." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233 at 241 (5th Cir. 2014). To constitute a QWR, the correspondence must "enable[] the servicer to identify the

14

name and account of the borrower" and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Plaintiff did not attach a copy of the alleged QWR to the petition, nor did he allege that the correspondence met the requirements of a QWR or that LoanCare's failure to provide a response caused him actual damages. This type of conclusory pleading is insufficient to state a valid RESPA claim. *Wilson v. Carrington Mortg. Servs. LLC*, No. CV 24-237, 2025 WL 106428, at *5 (W.D. La. Jan. 15, 2025) ("Simply stating that the Petition says the Defendant 'failed to respond' to QWRs without any facts to support how they achieved such a violation does not constitute 'well-pleaded' factual allegations that can establish a plausible right to relief.").

Accordingly, Plaintiff has failed to state a plausible RESPA claim against LoanCare.

### 4. FDCPA

While Plaintiff references the FDCPA in his original petition, he does not provide any factual support explaining the basis for such a violation. *See* ECF No. 1-3 at 4, 6. Accordingly, he has failed to state a claim against any Defendant for a violation of the FDCPA and any such claim is **DISMISSED WITH PREJUDICE**.

### 5. State-Law Claims

#### a. Common Law Fraud

The elements of a fraud claim in Texas are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the trust and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party

15

acted in reliance on the representation; and (6) the party thereby suffered injury. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009).

Plaintiff has not stated a claim against any of the Defendants with the particularity required under FED. R. CIV. P. 9(b) for claims sounding in fraud. The petition alleges no facts as to the "the who, what, when, and where" of the fraudulent misrepresentations that would be sufficient to put Defendants on notices of the claims against them. *Williams v. VMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). And, again, to the extent that his fraud claims are premised on his failed theories of securitization and loan transfer, they are precluded by the res judicata and collateral estoppel.

### b. Texas Deceptive Trade Practices Act ("DTPA") Violations

The Petition states that "Defendants falsely represented their right to foreclose, violating Texas fraud laws." ECF No. 1-3 ¶ 19. It appears that these are claims of violations of Texas Business and Commerce Code §§ 27.01 and 17.46.

Section 27.01 is entitled Fraud in Real Estate and Stock Transactions and requires "(1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contact; and (B) relied on by that person in entering into that contact; or (2) false promise to do an act, when the false promise is (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering that contact." TEX. BUS. & COMM. CODE § 27.01. 20. It is unclear how any of the Defendants violated Section 27.01: Plaintiff does not allege that he was induced into a contract by the fraud but that Defendants falsely represented their right to foreclose. ECF No. 1-3 ¶ 19.

To establish a claim for deceptive trade practices under Section 17.46 under the DTPA, a borrower must allege facts showing that he is a consumer within the meaning of that provision.

*See* TEX. BUS. & COM. CODE § 17.45(4); *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). Texas courts, however, have consistently held that borrowers do not qualify as "consumers" within the meaning of the DTPA because borrowing or lending money does not constitute the acquisition of a good or service. *See, .e.g.*, *La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 735 (E.D. Tex. 2011) ("Because lending money does not constitute the acquisition of a good or service, this court finds that Plaintiffs do not qualify as 'consumers' . . . and do not have standing under the DTPA.").

Plaintiff has failed to state a claim under the DTPA.

### c. Wrongful Foreclosure & Unlawful Eviction

To state a claim for wrongful foreclosure, a plaintiff must allege: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Duncan v. Hindy*, 590 S.W.3d 713, 723 (Tex. App.—Eastland 2019, pet. denied).

Plaintiff does not allege that the Property sold for an inadequate price and, accordingly, has failed to state a claim for wrongful foreclosure.

Plaintiff further alleges that "Defendants unlawfully foreclosed and facilitated eviction without proper authority, violating Texas Property Code § 51.002." ECF No. 1-3 ¶ 20. Plaintiff gives no indication as to what part of Texas Property Code § 51.002 was allegedly violated, how, or by whom. He has failed to allege a violation of the Texas Property Code.

**III.     Dismissal of Remaining Claims and Warning Against Vexatious Litigation**

The Court will exercise its authority to dismiss Plaintiff's remaining claims as to U.S. Bank, Nathan Shelton,[3] and Bill Atmore pursuant to Rule 12(b)(6) sua sponte. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173 (5th Cir. 2006) (citing *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)). Courts may dismiss claims for failure to state a claim sua sponte, provided that the procedure employed in doing so is fair. *Id.* Although the procedure generally involves giving the plaintiff notice and an opportunity to respond. Here, the Court observes that Plaintiff's claims appear to rely on the same defective legal theories that he advanced in the First and Second Actions. *Id.* at 1177.

Plaintiff seeks to recover from Shelton, who purchased the Property at the foreclosure sale, and Atmore, Shelton's attorney, for statements they made about the foreclosure proceedings. He complains of "Nathan [Shelton]'s direct statements that he 'will win' the eviction hearing because judges in eviction courts do not consider the underlying foreclosure issues" and "Bill Atmore's assurance to [Shelton] that this home belongs to him, despite the clear legal disputes and fraudulent nature of the foreclosure." ECF No. 1-3 at 3.

To begin, Plaintiff has not stated a claim against either Shelton or Atmore with the particularity required under Rule 9(b) for claims sounding in fraud. He has not identified when or where any these allegedly misleading statements were made and does not allege that he reasonably relied on them and has sustained damages as a result. Even assuming Plaintiff could provide greater factual detail about these statements, neither of them constitutes a material misrepresentation about the nature of the foreclosure. Despite Plaintiff's persistent belief that the securitization and

---

[3] Mr. Shelton is identified in the case caption as "Nathan Shelton" but appears elsewhere in the petition as "Nathan Skelton." *See* ECF No. 1-3 at 3. In the interest of clarity, the Court's ruling applies to the purchaser of the Property, whether his surname is "Shelton" or "Skelton."

18

assignment of his mortgage loan and transfer of related servicing rights somehow preclude foreclosure, his legal theories have no basis in Texas law and have been repeatedly rejected by this Court. Plaintiff's mere disagreement with Shelton and Atmore's statements does not render them fraudulent. Accordingly, permitting Plaintiff an opportunity to replead his claims against Shelton and Atmore would be futile. Plaintiff's claims against Shelton and Atmore are dismissed.

Plaintiff's alleges that U.S. Bank, as trustee of the securitization trust into which the mortgage loan was sold, "lacks a clear chain of title." ECF No. 1-3 at 4. Plaintiff does not appear to assert any claims against U.S. Bank specifically. To the extent that any such claims are premised on Plaintiff's meritless split-the-note and securitization theories, however, they fail to state a cognizable claim and are dismissed.

Plaintiff is **WARNED** that initiating new actions based on claims and legal theories that have already been dismissed in the First Action, Second Action, or this Third Action may result in the imposition of sanctions, including a pre-filing injunction and/or attorneys' fees.

### IV.     Plaintiff's Remaining Motions (ECF Nos. 8, 12, 14)

Plaintiff's motion for issuance of subpoena duces tecum (ECF No. 8), motion to reinstate possession (ECF No. 12), and motion for judicial review of emergency motion (ECF No. 14) are **DENIED AS MOOT** in light of the dismissal of this case.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (ECF No. 4) is **DENIED**, and the Court will exercise jurisdiction over his claims;

LoanCare's motion to dismiss (ECF No. 3) is **GRANTED**, and Plaintiff's claims against LoanCare are **DISMISSED WITH PREJUDICE**;

19

Cornerstone's motion to dismiss (ECF No. 5) is **GRANTED**, and Plaintiff's claims against Cornerstone are **DISMISSED WITH PREJUDICE**;

Plaintiff's claims remaining claims against U.S. Bank, Nathan Shelton, and Bill Atmore are **DISMISSED**.

Plaintiff's motion for issuance of subpoena duces tecum (ECF No. 8), motion to reinstate possession (ECF No. 12), and motion for judicial review of emergency motion (ECF No. 14) are **DENIED AS MOOT** in light of the dismissal of this case.

The Clerk is **DIRECTED** to **CLOSE** this case. A final judgment will follow pursuant to Rule 58.

It is so **ORDERED**.

**SIGNED** this 22nd day of May, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE